CONOR L. MCGEE,

     Plaintiff,

v.

OSHKOSH DEFENSE, LLC,
WISCONSIN ECONOMIC
DEVELOPMENT CORPORATION,
STATE OF WISCONSIN, and
OSHKOSH POLICE DEPARTMENT,

     Defendants.

OPINION & ORDER

Case No. 18-cv-705-wmc

---

*Pro se* plaintiff Conor L. McGee filed this lawsuit against Oshkosh Defense, LLC, the Wisconsin Economic Development Corporation ("WEDC"), the State of Wisconsin, and the Oshkosh Police Department. McGee invokes various claims against these defendants, all of which appear to stem from McGee's unsuccessful efforts to be hired by Oshkosh Defense in 2017, and a search of McGee's person conducted by the Oshkosh Policy Department *during* one of his interviews at Oshkosh Defense. Specifically, McGee claims that: (1) Oshkosh Defense and the WEDC violated his rights under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12131-12134, in failing to hire him; and (2) all defendants violated his federal and state law rights by conspiring to steal his innovations and inventions, sexually assaulting him, threatening him, retaliating against him, and defaming him. Currently pending are motions to dismiss filed by Oshkosh Defense, the WEDC, and the State of Wisconsin have moved to dismiss, and a motion for judgment on the pleadings filed by the Oshkosh Police Department. (Dkt. ##15, 19, 22, 27.) For the reasons that follow, the court will grant defendants' motions to dismiss and for judgment on the pleadings and direct entry of judgment in defendants' favor.

Plaintiff Conor L. McGee names four defendants in this lawsuit: Oshkosh Defense, LLC; the State of Wisconsin; the Wisconsin Economic Development Corporation; and the Oshkosh Police Department. The allegations in his complaint are vague, disjointed, and often interrupted by conclusory assertions about violations of his rights, but his claims arise out of efforts to obtain employment with defendant Oshkosh Defense.

McGee alleges that in April and October of 2017, he applied for the posted position of Project Coordinator - Data Science at Oshkosh Defense. It is unclear what McGee actually alleges happened during the first interview in April, but McGee at least alleges that he not only failed to get the position, but the Oshkosh Police Department was called, which led to the police confronting McGee. During that confrontation McGee claims that officers harassed, illegally searched and abused him. Unfortunately, McGee has not provided any facts about why the police were called during that interview, the names of the officers actually who were involved, nor what exactly was the claimed basis for their search, if any. McGee then apparently applied and was interviewed for the second job posting with Oshkosh Defense in October 2017. McGee learned that he did not receive that position on November 20, 2017.

During both interview processes, McGee interacted with the Senior Director of Product Support Engineering, Clint Herrick. McGee alleges during his various interactions with Herrick related to his applications, Herrick: (1) made negative comments about McGee's physical disability; (2) made disparaging remarks about a birth defect; (3)

---

[1] The following factual summary is taken from plaintiff's pleadings, when viewed in a light most favorable to him.

questioned whether McGee had worked in dangerous environments and referred to him as a "mental health victim"; (4) requested that the Oshkosh Police Department search McGee during the April 2017, interview; (5) gaslighted McGee by questioning his credibility and sanity; (6) took credit for harming McGee; (7) prevented McGee from applying for positions with Oshkosh Defense on other occasions; (8) threatened him; and (9) retaliated against McGee.

McGee claims that Oshkosh Defense discriminated against him on the basis of his disability by failing to hire him and then mishandling and opposing his subsequent complaint about its failure to hire him. McGee also claims that Oshkosh Defense stole his technological inventions and innovations, conspired to sexually assault him, and engaged in a propaganda war to discredit his name. Related to the theft of his inventions, McGee further claims that Oshkosh Defense conspired with WEDC and the State of Wisconsin to steal his inventions to create manufacturing jobs in Oshkosh and the State of Wisconsin. Finally, related to his sexual assault claim, McGee claims that Oshkosh Defense conspired with the Oshkosh Police Department and the State of Wisconsin to allow Oshkosh Police Detective Jeremy Wilson and Chris Sell to "sexually assault, rape, stalk, threaten, and abuse" McGee over "many years." (Compl. (dkt. #1) ¶ 8.)[2]

In his opposition briefing (dkt. ## 26, 34), McGee appears to attempt to allege additional facts not discernable in his complaint, which although vague, includes that: (1) he suffers from a birth defect, a broken collarbone, a qualified mental health disability, and near-sightedness; (2) he was essentially an employee of the WEDC and the State of

---

[2] McGee also alleges that the same thing happened to another unidentified individual who is currently incarcerated by the Wisconsin Department of Corrections ("DOC").

Wisconsin by virtue of these two entities stealing his intellectual property; (3) Oshkosh Defense stole and patented his "original technical and technological inventions, improvements, and enhancements"; (4) he was forced into sexual acts, and act of prostitution by defendants; and (5) his father was involved in conspiring with the Oshkosh Police Department to subject him to sexual slavery by having him involuntarily committed.

McGee alleges that on May 25, 2018, he received a right to sue letter from the Equal Employment Opportunity Commission ("EEOC"). McGee has not alleged who he named in his EEOC Charge, nor has he alleged whether he filed a notice of claim against defendants.

OPINION

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a plaintiff must allege "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In effect, this means that the complaint must indicate "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" and "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 556. When "[e]valuating the sufficiency of the complaint, [the court] construes it in the light most favorable to the non-moving party, accept[s] well-[pled] facts as true, and draw[s] all inferences in [the plaintiff's] favor." *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d. 939, 946 (7th Cir. 2013).

A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is reviewed under the same standard as Rule 12(b)(6), except that the court considers not

only the complaint and referenced documents, but all pleadings, as well as documents that are incorporated into any pleading by reference. *Buchanan-Moore v. City of Milwaukee,* 570 F.3d 824, 827 (7th Cir. 2009); *United States v. Wood,* 925 F.2d 1580, 1582 (7th Cir. 1991). To succeed, "the moving party must demonstrate that there are no material issues of fact to be resolved," even with the court viewing all facts in the light most favorable to the nonmoving party. *N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 452 (7th Cir. 1998). While the non-moving party's factual allegations are generally accepted as true in response to a 12(c) motion, "allegations in the form of legal conclusions are insufficient to survive." *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (citing *McReynolds v. Merrill Lynch & Co., Inc.,* 694 F.3d 873, 885 (7th Cir. 2012)).

Here, each defendant moved separately for dismissal, at times on distinct grounds. While the court will address each defendant's motion separately, the court notes at the outset, that McGee's assertions and allegations related to the alleged conspiracy by the defendants to both steal his intellectual property and inventions, as well as threaten, harass and assault him are simply too implausible and lacking in specificity to pass muster under the commonsense standard the court must use in evaluating whether a complaint satisfies the pleading requirements described in *Iqbal* and *Twombly.* Indeed, McGee has alleged precious few *facts* of any kind in his complaint, and as reflected above, the court could discern only a handful. The balance of McGee's complaint and opposition brief relate to assertions and accusations that defendants have been conspiring against him for years in numerous ways. Given the alleged breadth and egregiousness of this alleged conspiracy, the court cannot deem his allegations plausible absent some, specific factual allegations grounding his assertions in reality.

5

Oshkosh Defense cites to a decision from the Court of Appeals for the Seventh Circuit that supports this conclusion. In *Walton v. Walker*, 364 F. App'x 256, 257 (7th Cir. 2010), the court affirmed dismissal of a complaint in which a complaint set forth "unsupported allegations that a wide variety of state and local officials over many months conspired to violate" the plaintiff's rights. *Id.* at 258. The court commented that "the sheer size of the alleged conspiracy -- involving numerous agencies of state and local government -- points in the direction of paranoid fantasy." *Id.* at 257. McGee's conspiracy-related claims, all based on references to the theft of his unspecified innovations and intellectual property and threats, harassment and assaults that seems to have plagued him for years, are too far-fetched and vague (as to the basic who, what, where, when and how) to avoid dismissal. Indeed, given that *neither* of McGee's opposition briefs (dkt. ##26, 34) suggests that he is able to allege *any* facts suggesting that these wide-ranging conspiracies exist, much less that any named defendant engaged in a specific act in furtherance of the conspiracy, confirms that dismissal of these broad claims is appropriate as failing to rise above the speculative level. Regardless, even granting him the leniency this court affords *pro se* litigants such as McGee, his varied claims must be dismissed on the grounds of immunity and for failure to state a claim.

## I.  Defendant Oshkosh Defense, LLC's Motion to Dismiss (dkt. #15)

Oshkosh Defense seeks dismissal of all of McGee's claims against it, on the grounds that his allegations do not support an ADA claim, nor any claim under Wisconsin law related to intellectual property, assault or battery, or defamation.

## A.      ADA claim

"The ADA and Rehabilitation Act prohibit an employer from discriminating against a qualified individual with a disability because of the disability." *Jackson v. City of Chic.*, 414 F.3d 806, 810 (7th Cir. 2005) (quoting *Silk v. City of Chic.*, 194 F.3d 788, 798 (7th Cir. 1999)).  Regardless of whether plaintiff's claim is viewed as outright discrimination or a failure-to-accommodate, he must allege that he is "disabled" under the ADA and that with or without accommodation he could perform the job's essential functions.  *See Hooper*, 804 F.3d at 853 (citing *Bunn v. Khoury Enters., Inc.*, 753 F.3d 676, 683 (7th Cir. 2014)) (identifying elements of discrimination claim as: being disabled under the ADA, qualified to perform job's essential functions, and termination because of the disability); *E.E.O.C. v. Sears, Roebuck & Co.*, 417 F.3d 789, 797 (7th Cir. 2005) (citing *Hoffman v. Caterpillar, Inc.*, 256 F.3d 568, 572 (7th Cir. 2001)) (identifying elements of failure-to-accommodate claim as: being "a qualified individual with a disability"; employer knowledge of disability; and the employer's failure to accommodate the disability).

In order to be such a "qualified individual," an employee must also "satisf[y] the prerequisites for the position" and be able to "perform the essential functions of the position . . . with or without reasonable accommodation" *at the time he was fired*.  *Stern v. St. Anthony's Health Ctr.*, 788 F.3d 276, 285, 287 (7th Cir. 2015); *see also Whitaker v. Wis. Dept. of Health Servs.*, 849 F.3d 681, 684 (7th Cir. 2017) (explaining that an "otherwise qualified" employee is one who "is capable of performing the 'essential functions' of the job with or without a reasonable accommodation"); *Nowak*, 142 F.3d at 1003 (explaining that the qualified individual determination "must be made as of the time of the employment decision" (internal citation omitted)).  Finally, plaintiff bears the burden of

establishing that he was a qualified employee. *Nowak*, 142 F.3d 1003.

Here, McGee's allegations do not satisfy the first element of an ADA claim. While he refers to himself as "disabled" and mentions both physical and mental disabilities, McGee's complaint fails to allege sufficient facts to infer that he would actually qualify disabled as defined by the ADA. In his opposition brief, McGee does add additional information about his condition, claiming that he suffers from a "congenital birth defect and related symptoms," he "sometimes" limps, was born with a broken collarbone, is near-sighted and has a qualified mental health disability. (Pl. Opp'n Br. (dkt. #26) at 1, 5.) Yet McGee has not paired these descriptions with any factual averments related to *how* his physical and mental health challenges actually affected any major life activity. This dooms his ADA claim.

Oshkosh Defense points to a recent decision from the Court of Appeals for the Seventh Circuit, *Koty v. DuPage Cty., Ill.*, 900 F.3d 515, 519 (7th Cir. 2018), affirming the district court's dismissal of an ADA claim under similar allegations. Indeed, in *Koty*, the plaintiff's complaint actually contained *more* details about the alleged disability than McGee does here, including that he had a femoral hip impingement with torn labrum and other medical disabilities, and that the pain was aggravated by the vehicle his employer assigned to him to drive. *Id.* Nevertheless, the Seventh Circuit affirmed the dismissal of the ADA claim because the plaintiff had failed to allege that his injuries affected "any major life activity." *Id.* Given that McGee's allegations -- drawn from both his complaint and briefing -- are even less concrete, and McGee has included *no* details about how his physical and mental health issues actually impact his life on a daily basis, his ADA claim fails at the first element.

Even if McGee had cleared this first hurdle, Oshkosh Defense also points out that McGee's allegations do not satisfy the second element, requiring that he "is qualified to perform the essential function of the job either with or without reasonable accommodation." *Gogos v. AMS Mech. Sys., Inc.*, 737 F.3d 1170, 1172 (7th Cir. 2013). Since McGee's complaint provides no details about his desired position with Oshkosh Defense, much less any allegations about his qualifications to perform the functions of that position, his ADA claim fails at the second element as well.

### B.    Intellectual Property

As for plaintiff's claims that Oshkosh Defense stole his inventions and innovations, using them to bring manufacturing jobs to the State of Wisconsin, many of these assertions rise under his conspiracy claims that must be dismissed for reasons already explained above. Moreover, to the extent McGee intended to pursue claims against Oshkosh Defense related to the alleged theft of his intellectual property, they are also wholly lacking in any degree of detail or context about *what* plaintiff's inventions or innovations were or *how* Oshkosh Defense used them to support a claim for relief. Nor does McGee allege to *whom* he disclosed the details of his inventions and/or innovations, or by what artifice or other means Oshkosh Defense purloined them for its own use.

Similarly, to the extent that McGee might be pursuing a patent, copyright or trademark infringement claim, his complaint does not support it since McGee has not actually alleged that he owns or licenses *any* patents, trademarks or copyrights. *Alloc, Inc. v. Pergo, Inc.*, 572 F. Supp. 2d 1019, 1022 (E.D. Wis. 2008) ("The Patent Act provides that only '[a] patentee shall have a remedy by civil action for infringement of his patent.'")

(citing 35 U.S.C. § 281); *Design Basics, LLC v. Lexington Homes, Inc.*, 858 F.3d 1093, 1099 (7th Cir. 2018) ("To establish copyright infringement, a plaintiff must prove two elements," including "ownership of a valid copyright"); *Packman v. Chicago Tribune, Co.*, 267 F.3d 628, 638 (7th Cir. 2001) ("To prevail on a Lanham Act claim, a plaintiff must establish that . . . her mark is protectable."). This failure alone precludes McGee from stating a vialbe infringement claim.

Similarly, plaintiff cannot maintain a claim for misappropriation of trade secrets. Under the Wisconsin Uniform Trade Secrets Act, Wis. Stat. § 134.90 (2015-2016), "[t]o qualify as a protectible trade secret, the [material]: (1) must be information such as a formula, pattern, compilation, program, device, method, technique or process; (2) that has independent economic value, available from only one source; and (3) is the subject of reasonable efforts to maintain its secrecy." *ECT Int'l, Inc. v. Zwerlein*, 228 Wis. 2d 343, 349, 597 N.W.2d 479 (Ct. App. 1999). To maintain a trade secrets claim, a plaintiff must also "describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special knowledge of those persons who are skilled in the trade, and to permit the defendant [and the court] to ascertain at least the boundaries within which the secret lies. *Id.* at 350 (citation omitted).

McGee's description of his innovations and inventions provides no such details; as best the court can infer from his complaint and other submissions, his so-called "innovations and/or inventions" *may* relate to improving products, and they were used to increase manufacturing jobs. Setting aside his problematic lack of specificity about what his trade secret may be, none of McGee's filings suggest that he intended to, or attempted

to, keep his ideas, innovations and/or inventions a secret. Accordingly, McGee cannot maintain any claim related to Oshkosh Defense's alleged misappropriation.

### C.    Assault and/or Battery

McGee next claims that Oshkosh Defense is somehow implicated in the alleged assault and battery he suffered at the hands of the Oshkosh Police Department. In Wisconsin, a battery, or assault and battery is a common law tort, defined as an intentional contact with another that is unpermitted. *Estate of Thurman v. City of Milwaukee*, 197 F. Supp. 2d 1141, 1152 (E.D. Wis. 2002) (citing *McCluskey v. Steinhorst*, 45 Wis. 2d 350, 357, 173 N.W.2d 148 (1970). McGee provides absolutely no details about the alleged assaults and batteries. Instead, McGee alleges that during his April 2017 interview at the Oshkosh Defense campus, someone at Oshkosh Defense requested that the Oshkosh Police Department search his body. Yet McGee provides no details about who actually conducted a search of his body, how it was conducted, or whether any Oshkosh Defense employee was involved in that search. As such, he has failed to allege sufficient facts to permit an inference that any Oshkosh Defense employee actually intended to touch McGee's body in an unpermitted manner.

Oshkosh Defense's position is that since McGee alleges that Oshkosh Defense merely requested that police search him, McGee's assault and battery claim fails as a matter of law, citing to *Meyer v. Briggs*, 18 Wis. 2d 628, 631, 119 N.W.2d 354 (1963), in which the Wisconsin Supreme Court affirmed the dismissal of an assault claim against the owners of a roller rink who refused to allow individuals to enter their facility and then requested that the police remove them from their property. The court is inclined to agree, especially

since McGee's response does not suggest that he may be able to provide more details of the alleged assault that would preclude dismissal. Rather, McGee simply repeats that he was subjected to torture, harassment, stalking and assault by certain unnamed *police officers*, without alleging when those abuses happened, much less how any employee of Oshkosh Defense was involved. (*See* dkt. #26, ¶¶ 4, 5, 9.) Accordingly, there is no basis for plaintiff to proceed on a Wisconsin claim for assault and battery against Oshkosh Defense.

### D.    Defamation

Finally, McGee's defamation claim against Oshkosh Defense must be dismissed as well. Under Wisconsin law, a defamation claim that does not involve a public figure must allege three elements: (1) a false statement; (2) communicated by speech, conduct or in writing to a person other than the person defamed; and (3) the communication is not privileged and would tend to harm one's reputation so as to lower him or her in the estimation of the community or deter third persons from associating or dealing with him or her. *Amoroso v. Schuh*, 278 F. Supp. 3d 1106, 1111-12 (W.D. Wis. 2017) (quoting *In re Storms*, 2008 WI 56, ¶ 38, 309 Wis. 2d 704, 750 N.W.2d 739).

While McGee claims that Oshkosh Defense "turn[ed] public opinion against" him, "cast[ed] him in a specious light," and "recast[ed] his injury in the mold of its aspersions," (Compl. (dkt. #1) ¶ 14), these assertions are too vague and conclusory to infer that any of the necessary elements of a claim for defamation are met. More specifically, McGee has not specified *what* statement Oshkosh Defense made that was false; he has not alleged *how* Oshkosh Defense actually communicated it to another person; he has not identified *who* the alleged other person is; and he has not explained how such a communication *actually*

harmed him within the community.  Accordingly, the court will dismiss this claim as well and grant Oshkosh Defense's motion to dismiss in its entirety.

## II.     Defendant State of Wisconsin's Motion to Dismiss (dkt. #19)

Next, the State seeks dismissal of McGee's claims because it is immune from suit and because McGee's complaint fails to state a claim against it.  The court agrees on both points and, thus, will grant the State's motion as well.

As an initial matter, states are immune from suits for monetary damages under 42 U.S.C. § 1983.  *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66 (1989); *Thomas v. Ill.*, 697 F.3d 612, 613 (7th Cir. 2012) ("The suit is against a state and a state agency and Congress did not abrogate the states' sovereign immunity from suit under section 1983, as it could have done.").  While the Eleventh Amendment does not bar damages suits against state officials in their individual capacities, *Kroll v. Bd. of Trustees of the Univ. of Ill.*, 934 F.2d 904, 907 (7th Cir. 1991), McGee has named no individual employees of the State of Wisconsin as defendants.  To the extent McGee seeks to pursue a claim for damages against the State itself for alleged constitutional violations, the Eleventh Amendment bars his § 1983 claims again it.

With respect to McGee's claims that his innovations and inventions have been stolen, the State also points out that it is immune from suit for such a claim.  Indeed, the State is immune from suit under either the Patent Act or the Lanham Act.  *See Fla Prepaid Postsecondary Educ. Expense Bd. v. Coll. Sav. Bank*, 527 U.S. 627, 647 (1999) (Patent Act does not waive states' sovereign immunity from private suits under the Eleventh Amendment); *Coll. Sav. Bank v. Fla Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666

(1999) (same as to Lanham Act). The State of Wisconsin also enjoys sovereign immunity from any claims of unfair competition or theft of intellectual property arising under Wisconsin law. *See Markovic v. Dep't of Corr. of Wisconsin*, No. 09-cv-42-bbc, 2009 WL 1293083, at *3-4 (W.D. Wis. Apr. 30, 2009) ("Plaintiffs' claim that defendant Wisconsin Department of Corrections violated Wis. Stat. § 100.18(1) is DISMISSED because that defendant enjoys sovereign immunity.")

McGee's only potentially remaining claims against the State in the face of an Eleventh Amendment defense relate to his vague allegations of a larger conspiracy, which requires dismissal for reasons already addressed above. To elaborate slightly further, McGee's allegations cannot support a claim that the State was part of a conspiracy to violate his constitutional rights, since a "conspiracy is not an independent basis of liability in § 1983 actions." *Smith v. Gomez*, 550 F.3d 613, 617 (7th Cir. 2008) (citing *Cefalu v. Village of Elk Grove*, 211 F.3d 416, 423 (7th Cir. 2000)). Rather, to state a valid claim, a plaintiff must allege some affirmative action on the part of each defendant that violated his constitutional rights. *Cefalu*, 211 F.3d at 423. Moreover, conspiracy claims must be plead with specificity and cannot rest on "vague" and "ill-defined" allegations. *Ryan v. Mary Immaculate Queen Ctr.*, 188 F.3d 857, 860 (7th Cir. 1999). Plaintiff may have used the word "conspire" in his complaint, but as discussed earlier, he does not provide any details as to how the State was actually involved in events that violated his constitutional rights. Accordingly, he has failed to allege facts that would support a conspiracy claim against the State under § 1983.

As for the allegation that the State conspired with Oshkosh Defense, LLC, to provide manufacturing jobs in Oshkosh, Wisconsin, with "illegally procured technology

that is the property and invention of Plaintiff," the defendant points out that plaintiff has not alleged ownership of any intellectual property rights protected by the Patent Act or Lanham Act. Similarly, he has not alleged what trade secret was appropriated under the Wisconsin Uniform Trade Secrets Act, Wis. Stat. § 134.90, dooming this claim as well. *See ECT Int'l, Inc.*, 228 Wis. 2d at 350, 597 N.W.2d at 482 ("the party asserting a trade secret [must] include with some specificity the nature of the trade secret").

To round out its arguments, the State addresses one last, possible theory McGee may be attempting to pursue against it: that the police officers of the Oshkosh Police Department are somehow agents of the State, and the State can be held liable for their actions. Setting aside the problem that the Oshkosh Police Department is an arm of the City of Oshkosh, not a sub-division of the State of Wisconsin, § 1983 does not recognize respondeat superior. Rather, "liability does not attach unless the individual defendant caused or participate in a constitutional violation." *Hildebrandt v. Illinois Dep't of Natural Res.*, 347 F.3d 1014, 1039 (7th Cir. 2003); *see also Carpenter v. Vaughn*, No. 09-c-1154, 2010 WL 420053, at *4 (E.D. Wis. Jan. 29, 2010) (State of Wisconsin not a proper party to a § 1983 action due to Eleventh Amendment immunity and lack of respondeat superior liability). In contrast, McGee has not alleged any facts that would implicate any State of Wisconsin official who knew that Oshkosh police officers would or did violate McGee's constitutional rights. As McGee's allegations do not support any cognizable claim against the State, the court will also grant its motion to dismiss.

## III.     Defendant Wisconsin Economic Development Corporation (dkt. #22)

Construed generously, it appears that McGee is pursuing state law claims for civil conspiracy and conversion, and possibly an ADA claim, against defendant WEDC. WEDC seeks dismissal because McGee failed to file a notice of claim, as required by Wis. Stat. § 893.80(1d) and because his allegations also fail to state a claim for an ADA violation.

### A.     Notice of Claim

Wis. Stat. § 893.80(1d) requires a notice of claim and itemization of damages prior to suing certain identified public entities as follows:

> (1d)  Except as provided in subs. (1g), (1m), (1p) and (8), no action may be brought or maintained against any volunteer fire company …, political corporation, governmental subdivision or agency for acts done in their official capacity or in the course of their agency or employment upon a claim or cause of action unless:
>
> (a) Within 120 days after the happening of the event giving rise to the claim, written notice of the circumstances of the claim signed by the party, agent or attorney is served on the volunteer fire company, political corporation, governmental subdivision or agency and on the officer, official, agent or employee under s. 801.11.  Failure to give the requisite notice shall not bar action on the claim if the fire company, corporation, subdivision or agency had actual notice of the claim and the claimant shows to the satisfaction of the court that the delay or failure to give the requisite notice has not been prejudicial to the defendant fire company, corporation, subdivision or agency or to the defendant officer, official, agent or employee; and
>
> (b) A claim containing the address of the claimant and an itemized statement of the relief sought is presented to the appropriate clerk or person who performs the duties of a clerk or secretary for the defendant fire company, corporation, subdivision or agency and the claim is disallowed.

*Id.*

"Compliance with subsections (a) and (b) of § 893.80(1d) is mandatory to avoid dismissal of a lawsuit.  *Vanstone v. Town of Delafield*, 191 Wis. 2d 586, 530 N.W.2d 16 (Ct.

App. 1995) ("Failure to comply with this statute constitutes grounds for dismissal of the action."); *Casteel v. Baade*, 167 Wis. 2d 1, 10, 481 N.W.2d 712 (1998) (failure to comply with the requirements of § 893.80 deprives the court of competency); *Snopek v. Lakeland Med. Ctr.*, 223 Wis. 2d 288, 301, 588 N.W.2d 19 (1999) ("The notice of injury [or circumstances] and notice of claim provisions of § 893.80[] are unambiguously stated in the conjunctive; therefore, both provisions must be satisfied before the claimant may commence the action against a governmental agency.").

WEDC argues that it qualifies as a "political corporation" covered by the notice of claim statute based on the definition of this term adopted by the Wisconsin Supreme Court in *Rouse v. Theda Clark Med. Ctr., Inc.*, 2007 WI 87, ¶ 22, 302 Wis. 2d 358, 735 N.W.2d 30 (defined "political corporation" as "an entity created by the legislature that is authorized to implement enactments of the legislature"). In *Rouse*, the Wisconsin Supreme Court concluded that the University of Wisconsin Hospital & Clinics Authority ("UWHCA") was a political corporation for purposes of Wis. Stat. § 893.80, reasoning that the UWHCA followed a statutory purpose of providing high-quality health care, the composition of the board of directors was driven by statute, the voting members had to be either public officials or appointed by public officials, there was a duty to enter into agreements with the state, and the UWHCA had an obligation to update the state and provide the state records upon request. *Id.* ¶¶ 26-33, Wis. 2d at 374-77, 735 N.W. 2d at 38-40.

WEDC argues that it is identical to the UWHCA in all of the various ways the Wisconsin Supreme Court found material in concluding that the UWHCA is a "political corporation." First, the Legislature explicitly stated in establishing the WEDC that it was creating a "public body corporate and politic," just like UWHCA. *Compare* Wis. Stat. §

233.02(1) (creating the UWHCA, "a public body corporate and politic") *with* Wis. Stat. §

238.02(1) (creating the WEDC, "which is a public body, corporate and politic").  Second,

just as the UWHCA is obligated to carry out its mission related to health care, Wis. Stat.

§ 233.04, the WEDC's board is authorized to carry out its mission to "develop and

implement economic programs to provide business support and expertise and financial

assistance to companies that are investing and creating jobs in Wisconsin and to support

new business start-ups and business expansion and growth in Wisconsin."  Wis. Stat. §

238.03(1).  Third, like the UWHCA, the WEDC's board of directors are either public

officials appointed by public officials.  *Compare* Wis. Stat. § 233.02(1) (describing makeup

of the UWHCA board of directors) *with* Wis. Stat. § 238.02(1)(setting forth WEDC's

board composition requirements).  Fourth, both entities must submit an annual report to

the Wisconsin Legislature identifying projects for the coming calendar year, as well as a

report for the previous fiscal year.  *Compare* Wis. Stat. §§ 233.04(1), (9) (setting forth the

UWHCA's reporting requirements) *with* Wis. Stat. § 238.07 (setting forth WEDC's

reporting requirements).

McGee does not respond to this argument, either by opposing WEDC's

characterization of itself as a "political corporation," or by suggesting that he filed a notice

of claim against the WEDC.  Instead, he claims that the WEDC is a "shell corporation

designed to transfer liability from the state, for its illegal actions," and thus all of his

arguments related to the State of Wisconsin apply to his claims against the WEDC.  (Pl.

Br. at 3-4.)  By failing to address WEDC's notice of claim defense, however, McGee

effectively concedes its merit. *Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011)

("litigant effectively abandons the litigation by not responding to alleged deficiencies in a

motion to dismiss") (citing *Lekas v. Briley*, 405 F.3d 602, 614 (7th Cir. ); *Pettengill v. Cameron*, No. 17-cv-677-bbc, 2018 WL 1525724, at *3 (W.D. Wis. Mar. 28, 2018) (plaintiff's failure to oppose arguments in a motion to dismiss to avoid dismissal, and the court is not obliged to raise them for him or her) (citing *County of McHenry v. Ins. Co. of the West*, 438 F.3d 813, 819 (7th Cir. 2006)). As such, McGee cannot avoid dismissal of his state law claims against the WEDC.

### B.    ADA Claim

WEDC also argues that if the court were to infer that McGee is seeking to proceed on an ADA claim against it, the claim should be dismissed for his failure to exhaust his administrative remedies and because his claim is too conclusory to be allowed to proceed under that statute. Starting with the exhaustion argument, before commencing a lawsuit in federal court, a plaintiff is required to file a disability discrimination charge with the EEOC and obtain a notice of right to sue from the EEOC. 42 U.S.C. § 12117(a) (incorporating the exhaustion provisions from 42 U.S.C. § 2000e-5); *Stepney v. Naperville Sch. Dist. 203*, 392 F.3d 236, 239 (7th Cir. 2004). Typically, a party not named as a respondent to an EEOC charge may not be sued under the ADA, since the purpose of the EEOC charge is to give the charged party notice of the charge and an opportunity for informal resolution of the claim. *See Tamayo v. Blagojevich*, 526 F.3d 1074, 1089 (7th Cir. 2008) (citing *Olsen v. Marshall & Ilsley Corp.*, 267 F.3d 597, 604 (7th Cir. 2001); *Schnellbaecher v. Baskin Clothing Co.*, 887 F.2d 124, 126 (7th Cir. 1989)).

WEDC argues that since McGee failed to allege that he named it in his EEOC charge, the WEDC may not be sued under the ADA. Since McGee chose not to respond

to WEDC's exhaustion argument, it, too, has been conceded. In any event, the court has already concluded that McGee failed to state a claim under the ADA, since his allegations do not support an inference that he is disabled as defined by the ADA, nor that he was qualified to perform the requirements of the position he was seeking with a reasonable accommodation. Accordingly, the court will grant WEDC's motion to dismiss as well.

## IV. Defendant Oshkosh Police Department's Motion for Judgment on the Pleadings (dkt. #27)

Finally, the Oshkosh Police Department seeks judgment in its favor for several reasons, including that dismissal of McGee's claims against it are appropriate due to his failure to file a notice of claim with respect to his state law claims, that the Oshkosh Police Department is not a suable entity as for any claims McGee may be pursuing under 42 U.S.C. § 1983, and that McGee's complaint does not implicate any other federal claim for relief. Since the court agrees on all counts, it need not address any other grounds for dismissal.

### A. Notice of Claim

Similar to the WEDC, the Oshkosh Police Department seeks dismissal on all of McGee's state law claims for his failure to comply with the applicable notice of claim statute, Wis. Stat. § 893.80(1d). McGee does not dispute that he failed to follow the requirements of § 893.80(1d), and instead raises various arguments pertaining to the potential merit of his claims against the police department. However, the potential merit of his claims against the police department has no bearing on whether he satisfied

Wisconsin's notice of claim requirements. Accordingly, since McGee does not dispute that he failed to satisfy § 893.80(1d), his state law claims against the Oshkosh Police Department must be dismissed.

### B.      Federal Claims Must be Dismissed

Finally, McGee's claim that the Oshkosh Police Department conspired to violate his constitutional rights must also be dismissed. To start, the Oshkosh Police Department is not a suable entity under § 1983. *See Smith v. Knox County Jail*, 666 F.3d 1037, 1040 (7th Cir. 2012). Even construing McGee's claim to be against the City of Oshkosh, there is no basis for McGee to proceed, since a claim against the city would need to challenge an express or implied city policy or custom. *See Monell v. Dep't of Soc. Servs. Of City*. Moreover, to establish a policy or custom that would implicate the city, a plaintiff must allege: (1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, while not authorized by written law or an express governmental policy, is so permanent and well settled as to constitute a custom or usage with the force of law; or (3) the constitutional injury was caused by a person with final policymaking authority. *Id.* at 691-94. McGee's vague assertions that the police department engaged in a conspiracy to sexually abuse and threaten him simply do not support a finding that this alleged mistreatment was the product of a formal or informal policy or practice, nor that it occurred at the direction of a policymaking authority working for the city.

Assuming, for the sake of argument, that McGee *is* challenging a city policy authorizing the police department to conspire against him, McGee's allegations still cannot support such a claim, since as explained above, he has not pled more than a bare allegation

21

that a conspiracy existed.  *Ryan*, 188 F.3d 859.  Indeed, all McGee has done is (1) assert the existence of a conspiracy and (2) reference an incident in April 2017 when Oshkosh Defense called the police department and requested that police search him.

Even accepting as true that someone from Oshkosh Defense called the police and asked that McGee be searched, that fact does not support a finding that there was an agreement between these two entities to violate McGee's constitutional rights.  Nor has McGee responded with any argument or proposed factual allegations to the contrary.  Instead, he contends that the pleading standards set forth in *Iqbal* and *Twombly* do not apply to his claims, but he is simply mistaken.  Even as a *pro se* litigant, McGee must meet some bare bones pleading requirement.  *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (explaining that *pro se* pleadings are held to "less stringent standards than formal pleadings drafted by lawyers," but not relieved of those standards altogether).

Since McGee's complaint cannot support any other federal claim against the Oshkosh Police Department, judgment in its favor is appropriate, and the court will grant its motion for judgment on the pleadings as well.

ORDER

IT IS ORDERED that:

(1)    Defendant Oshkosh Defense, LLC's motion to dismiss (dkt. #15) is GRANTED.

(2)    Defendant State of Wisconsin's motion to dismiss (dkt. #19) is GRANTED.

(3)     Defendant Wisconsin Economic Development Corporation's motion to dismiss (dkt. #22) is GRANTED.

(4)     Defendant Oshkosh Police Department's motion for judgment on the pleadings (dkt. #27) is GRANTED.

(5)     Plaintiff's motions to stay deadlines (dkt. #41) and for preliminary injunction (dkt. #42) are DENIED AS MOOT.

(6)     The clerk of court is directed to enter judgment in defendants' favor.

Entered this 30th day of September, 2019.

BY THE COURT:

/s/

WILLIAM M. CONLEY
District Judge